IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN DAVID VOGT,<br>          Petitioner,<br><br>     vs.<br><br>COLEMAN; Superintendent of SCI-Fayette;<br>THE DISTRICT ATTORNEY OF THE COUNTY<br>OF BUTLER; and THE ATTORNEY GENERAL<br>OF THE COMMONWEALTH OF<br>PENNSYLVANIA,<br>          Respondents. | Civil Action No. 08-530<br><br>Magistrate Judge Lisa Pupo Lenihan |

## MEMORANDUM OPINION AND ORDER

Petitioner, Steven David Voyt, a state prisoner incarcerated at the State Correctional Institution at Fayette, Pennsylvania, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 wherein he raises claims concerning his convictions of Murder in the First Degree. For the reasons that follow, the Petition will be dismissed because it was not filed within the one-year limitations period provided for under 28 U.S.C. § 2244(d).

**A.     Relevant Facts and Procedural History**

The facts, as set forth by the Superior Court, are as follows.[1]  On May 12, 1990, Francis Landry picked up Michael Sopo, Margaret Zawodniak and Steven Vogt in his blue Nissan and took them to his residence in Export, Pennsylvania where, except for Landry, they drank beer. A while later, Walter Cowfer came to Landry's residence. Cowfer, Sopo and Zawodniak then left and went to Arthur McLearn's apartment where they discussed Landry's murder. The parties returned to Landry's residence where they resumed drinking beer. At some point, Cowfer went to Landry's car where Landry was sleeping and asked to take the car to Cupec's Lake. He then ordered Landry

---

1. Sup. Ct. Op. dated October 21, 1992 (doc. no. 14-4).

to get in the back seat where he was surrounded by two of the others.  They drove to the lake where they ordered Landry out of the car and pushed him over a hill where he fell a 30-40 foot drop into the lake.  The others threw rocks into the water and rolled a huge boulder into the water hitting Landry.  They then went back to the car, drank some more beer and left the area.  The next day, Landry's drowned body was discovered by some area scuba divers.  Several days later, State Trooper Strawbridge received a call from the Monroe County Sheriff's Department in Tavernier, Florida that Sopo, Vogt and Cowfer were in custody there and in possession of the registration plate of Landry's car and his wallet.

Subsequently, Vogt, Cowfer, Zawodniak, Sopo and McClearn were arrested and charged with Landry's murder.  Sopo pled guilty to criminal conspiracy and McClearn pled guilty to third degree murder; both men testified on behalf of the Commonwealth during the trial of Vogt, Cowfer and Zawodniak, which commenced before a jury on January 29, 1991, in the Court of Common Pleas of Butler County, Pennsylvania.  On January 31, 1991, Cowfer and Petitioner were found guilty of Murder in the First Degree, Robbery, Theft, Kidnapping and Criminal Conspiracy; Zawodniak was acquitted of all charges.  Following the denial of post-verdict motions, on June 17, 1991, Petitioner was sentenced to life imprisonment.

Petitioner filed a timely notice of appeal to the Superior Court of Pennsylvania, which was consolidated with the appeal of his co-defendant, Walter S. Cowfer, Jr.  Vogt filed his brief in the Superior Court on March 23, 1992, wherein he raised the following claims.

1. The evidence was insufficient to sustain the guilty verdicts as to the crimes of kidnapping, theft by unlawful taking and robbery.

2. The lower court erred by failing to grant Vogt's request for demurrer to reduce the first degree murder charge to third degree based on Petitioner's intoxication.

    3.    A new trial was required due to the prejudicial effect of improper criminal evidence being submitted to the jury.

On October 21, 1991, the Superior Court affirmed the judgment of the lower court (doc. no. 14-4). Petitioner filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania, which was denied by that court on June 25, 1993. Vogt did not seek discretionary review in the United States Supreme Court.

On September 17, 1997, Petitioner filed a *pro se* petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9542. Following appointment of counsel, an amended petition was filed asserting that Petitioner was entitled to relief due to newly discovered exculpatory letters from convicted co-conspirator Walter Cowfer. The first letter was written to Petitioner's counsel and outlined Cowfer's purported testimony had he elected to testify in his own defense at the joint trial and stated that Petitioner was innocent of Landrys' murder. This letter was placed in Petitioner's file without Petitioner's knowledge. On March 1, 1997, Cowfer sent another letter to Petitioner's counsel but mailed it to Petitioner instead. After receipt of this letter, Petitioner filed his PCRA petition. A PCRA hearing was scheduled for December 7, 1998; however, on that date, Vogt voluntarily withdrew his PCRA petition (doc. no. 16). The lower court specifically noted that although Cowfer had been transported to the Butler County Prison and was available for the hearing, Vogt still chose to voluntarily withdraw his PCRA petition. No appeal was filed.

On July 2, 2004, Petitioner filed a second PCRA petition. Appointed counsel filed an amended petition on November 17, 2004 raising the following claims.

    1.    Newly discovered evidence that Commonwealth witness, Michael Sopo, entered a guilty plea to burglary pursuant to a plea agreement with the Commonwealth dated January 14, 1991 and that counsel was ineffective for failing to effectively use this evidence to impeach this key witness.

    2.     Newly discovered evidence in the form of statements by codefendant, Walter S. Cowfer, Jr and that counsel was ineffective in failing to preserve this issue for review.

    3.     Ineffective assistance of counsel for failure to file a motion to sever Vogt's trial from his co-defendants.

    4.     Ineffective assistance of counsel for failure to call character witnesses.

    5.     Ineffective assistance of counsel for failure to prevent Commonwealth witnesses Carrie Deiseroth and Leonard Mayhugh from testifying that Walter S. Cowfer, Jr. was accompanied by an unidentified individual when he confessed to committing the homicide.

    6.     Ineffective assistance of counsel for failure to present an intoxication defense.

In the amended petition filed on November 17, 2004, Petitioner attached an affidavit by Cowfer dated September 23, 2004. In the affidavit, Cowfer averred that he went to the home of Leonard Mayhugh several hours after the murder of Mr. Landry. Cowfer related that Vogt, Sopo and Zawodniak waited in the car while he and Arthur McClearn entered the Mayhugh residence. A hearing was held on Petitioner's PCRA petition on January 27, 2006. On July 12, 2006, the Trial Court denied the PCRA Petition as untimely. Petitioner filed a timely Notice of Appeal and on October 24, 2007, the Superior Court of Pennsylvania affirmed the Trial Court's determination denying Petitioner PCRA relief. Petitioner filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania, which was denied by that court on April 8, 2008.

Petitioner's federal Petition for Habeas Corpus is dated April 14, 2008. In his Petition, he raises the following claims.

    1.     Prosecutorial misconduct in illegally suppression/withholding [sic] Brady material; the identity of male party to confession.

    2.     Prosecutorial misconduct in illegally redacting trial testimony of Com. witnesses Deiseroth and Mayhugh.

3. Prosecutorial misconduct in the knowing use of false evidence to convict Petitioner.

4. Prosecutions [sic] knowing use of false evidence when it elicited only some of the details of witness Sopo's plea agreement.

**B. Time Period for Filing Federal Habeas Corpus Petitions**

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under the one-year limitations period applicable to such petitions. In this regard, the federal habeas corpus laws were amended pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 142 Cong. Rec. H3305-01 (April 24, 1996). In section 101 of AEDPA, Congress imposed a new, one-year limitations period applicable to state prisoners, which provides as follows.

(d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment

>or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (as amended).

The Court of Appeals for the Third Circuit has held that the statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004), *cert denied*, 125 S.Ct.904 (Jan. 10, 2005). Thus, in analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger" date for the individual claims raised in the Petition. Typically, this is the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under section § 2244(d)(1)(A). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.

In the instant action, Petitioner filed a timely direct appeal from his sentence. The Supreme Court of Pennsylvania denied his timely-filed petition for allowance of appeal on June 25, 1993. Consequently, direct review of petitioner's conviction concluded and the judgment became "final" on or about September 25, 1993, at the expiration of the ninety-day period within which petitioner could have filed for a writ of certiorari in the United States Supreme Court.[2] Because Petitioner's judgment became final before the April 24, 1996 effective date of AEDPA, he had one

---

2  *See* Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review, including the time limit (90 days) for filing a writ of certiorari in the Supreme Court); Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999) (same for 28 U.S.C. § 2255 motions).

year from that date, *i.e.*, until April 23, 1997 to file a federal habeas corpus petition challenging his conviction.  *See* <u>Burns v. Morton</u>, 134 F.3d 109, 111 (3d Cir. 1998) (holding that the new one-year limitations period in the AEDPA became effective, *i.e.*, first began to run, on the effective date of the AEDPA statute, April 24, 1996); <u>Nara v. Frank</u>, 264 F.3d 310, 314 (3d Cir. 2001) (holding that petitioners whose convictions became final before the effective date of AEDPA had up until, and including, April 23, 1997 to file a timely petition under § 2244(d)(1)).

As stated above, Petitioner's federal habeas corpus is dated and signed April 14, 2008, well past the expiration of his one-year limitations period.  Consequently, this court must determine whether the Petitioner can take advantage of the "tolling" provision in section 2244(d)(2).  Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

With respect to the instant petition, Petitioner filed his first PCRA petition on September 17, 1997.  While this date appears to be outside the limitation period, his claim rested on alleged newly discovered evidence of Cowfer's letter.  Petitioner pursued his first PCRA proceeding until December 7, 1998, the date that he voluntarily withdrew his PCRA Petition.  His limitations period began running on January 7, 1999, thirty days after he withdrew his petition.  *See* <u>Morris v. Horn</u>, 187 F.3d 333, 337 n. 1 (3d Cir.1999) (holding that the applicable starting point is the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review, including the time for filing a writ of certiorari in the Supreme Court).  *Cf.* <u>Swartz v. Meyers</u>, 204 F.3d 417 (3d Cir.2000) (holding that habeas limitations period was tolled until

expiration of time in which petitioner could seek appeal from denial of post-conviction relief). Thus, his one-year limitation period as to that claim ended one year later on January 7, 2000.

On July 2, 2004, Petitioner filed his second PCRA petition; however, the Superior Court determined that his second PCRA petition was untimely filed. Specifically, the Superior Court held as follows.

> Appellant attempts, however, to invoke two of the statutory exceptions to the time for filing provisions, specifically, subsection (b)(1)(i) and (b)(1)(ii), which permit a defendant to file a petition beyond the one-year time limit when:
>
>> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States; or
>>
>> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.
>
> 42 Pa. Cons. Stat. § 9545(b)(1)(i)-(ii).
>
> Appellant first argues that he was unaware, at the time of his trial, of the **full extent** of the plea agreement offered to Commonwealth witness and co-conspirator, Michael Ryan Sopo. Although appellant now admits he knew Sopo pleaded guilty to a charge of criminal conspiracy for the murder of Landry, he contends he did not know that Sopo's plea agreement also included pleas to charges of burglary and conspiracy in a separate matter. He argues that this evidence 'if used appropriately, would go directly to the credibility of the witness and would negate certain facts placed in evidence that [the] jury was lead [sic] to believe.
>
> This evidence, however, does not meet either exception to the time for filing requirements. Appellant baldly claims that 'prosecutorial misconduct' prevented him from investigating the full extent of the plea agreement, and that he first learned of the specifics of the plea agreement on May 28, 2004, after his mother uncovered a copy of the agreement while checking the criminal records of Sopo.

However, appellant's trial counsel, Thomas Ceraso, testified at the January, 2006 evidentiary hearing that he was fully aware of Sopo's **entire** plea agreement, including his plea to charges of burglary and conspiracy in a separate matter, at the time of appellant's trial. He explained that, as a matter of trial strategy, he did not question Sopo regarding the specific charges to which he had pleaded guilty. Moreover, attorney Ceraso testified that, in his opinion, Sopo did not receive a "sweetheart deal." Therefore, since appellant's counsel was fully aware of all the charges to which Sopo had pleaded guilty at the time of appellant's trial, this evidence does not qualify for either the "governmental interference" or "unknown facts" exception to the timing requirements. Moreover, even if counsel had not been aware of Sopo's guilty pleas to the additional charges, appellant failed to prove that this information, which was of public record, could not have been ascertained earlier through due diligence.

Next, appellant contends that an affidavit signed by Cowfer, who did not testify at trial, also satisfies the time of filing exceptions in the Act. At trial, Commonwealth witnesses Leonard Mayhugh and Carrie Deiseroth testified that Cowfer arrived at their residence on the morning after the murder and confessed to his participation in the crime. They further testified that another young man, who was never identified at trial, accompanied Cowfer, and that Cowfer's statements implicated that person in the crime as well. Appellant asserts that, since he was the only male codefendant on trial with Cowfer, "[t]he implications drawn from this testimony [were] that it was [appellant] who was present at the time of Cowfer's meeting with Mayhugh and Deiseroth." However, appellant received an affidavit from Cowfer, dated September 23, 2004, which identified co-conspirator Arthur McClearn as the person who accompanied Cowfer that morning. Indeed, the affidavit also stated that appellant, Sopo, and co-defendant Zawodniak, waited for Cowfer and McClearn in a car outside of the residence.

Appellant baldly asserts that the prosecutor deliberately withheld the name of the "unidentified" man, in violation of Brady v. Maryland, 373 U.S. 83, (1963) and led the jury to believe that appellant was the person that accompanied Cowfer and silently agreed to complicity in the crime. While it is well-settled that a Brady violation can fall within the governmental interference exception appellant has only sixty days after the discovery of the information to file his PCRA and he must plead and prove that the information could not have been discovered earlier with the exercise of due diligence.

- 9 -

>	Here, appellant has failed to demonstrate that he could not have uncovered this information earlier through the exercise of due diligence. Appellant filed a previous PCRA petition in September of 1997, based on information Cowfer provided to him in a letter, which contradicted the Commonwealth's version of the crime. The trial court scheduled a December 7, 1998 evidentiary hearing on appellant's petition, and Cowfer was transferred to the trial court for the purpose of testifying on appellant's behalf. However, appellant voluntarily withdrew his petition prior to the evidentiary hearing. Although the information in the present affidavit is somewhat distinct from that provided in Cowfer's previous letter, appellant had the opportunity to question Cowfer at the hearing regarding all of the events surrounding the murder of Landry, but he declined to do so. Therefore, appellant has not proven that he could not have discovered this information earlier.
>
>	For similar reasons, appellant has failed to carry his burden of proving that Cowfer's most recent affidavit constitutes "unknown facts" sufficient to toll the PCRA time of filing requirements. Appellant had the opportunity to question Cowfer under oath at the scheduled evidentiary hearing in 1998, be he declined to do so. Thus, he has not demonstrated that the identity of the person who accompanied Cowfer to the residence of Mayhugh and Deiseroth could not have been ascertained earlier by the exercise of due diligence.

Sup. Ct. Op. dated October 24, 2007, pp. 7-10 (citations and footnotes omitted) (doc. no. 14-8).

	Petitioner's first three claims concern information he supposedly gained through an affidavit he received from Cowfer dated September 23, 2004 wherein he stated that Arthur McClearn was the person who accompanied him to the residence of Mayhugh and Deiseroth on the morning after the murder when he confessed to his participation in the crime. The affidavit also stated that Petitioner, Sopo, and co-defendant Zawodniak waited for Cowfer and McClearn in a car outside of the residence. In reviewing this claim in Petitioner's second PCRA proceeding, the Superior Court found that Petitioner did not exercise due diligence in discovering the factual predicate for his claims as he could have questioned Cowfer during his first PCRA hearing and chose instead to withdraw his

petition. The Court of Appeals for the Third Circuit has cautioned that "while due diligence does not require 'the maximum feasible diligence it does require reasonable diligence in the circumstances." LaCava v. Kyler, 398 F.3d 271, 277 (3d Cir. 2005) (citing Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir.2004)). This Court is bound by the Superior Court's factual findings relating to this issue. *See* Washington v. Sobina, 509 F.3d 613, 619 (3d Cir.2007) (holding that under section 2254(e)(1), federal habeas court must accept state-court factual finding relating to the federal statute of limitations). Consequently, as to Petitioner's first three claims, under 28 U.S.C. § 2244(d)(1)(D), his one-year limitations period ended on January 7, 2000, *i.e.*, one year plus thirty days after he voluntarily withdrew his PCRA petition. Unfortunately for him, the Petitioner did not file his federal habeas corpus petition until 2008, eight years after his limitations period had expired with respect to his first three claims.

With respect to his last claim concerning Sopo's plea agreement, the Superior Court found that such agreement was a matter of public record as of January 14, 1991, before Petitioner's trial and, therefore, discoverable to Petitioner and his representatives as of that date. Thus, this claim is governed under 2244(d)(1)(A) and the limitations period for this claim expired on April 23, 1997.

Moreover, Petitioner has not made any sufficient showing that the doctrine of equitable tolling should be applied in this action. Although AEDPA's one-year limitation in § 2244(d) is a statute of limitations, not a jurisdictional bar, and, therefore, may be equitably tolled:

> Equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient.

Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618-19 (3d Cir. 1998) (internal citations, quotations, and punctuation omitted).  The burden of establishing entitlement to the extraordinary remedy of equitable tolling rests with the petitioner.  *Id*. at 978.

> The United States Court of Appeals for the Third Circuit has indicated that equitable tolling of the AEDPA statute of limitations is permitted if:  "(1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum." Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.) (internal citation omitted), *cert. denied,* 534 U.S. 944 (2001).  In the instant action, Petitioner has not carried his burden of showing any extraordinary circumstances beyond his control that accounted for his failure to have filed his habeas petition in a timely manner. *See, e.g.*, Johnson v. Hendricks, 314 F.3d 159 (3d Cir. 2002) (agreeing with other circuits in holding that in non-capital cases, an attorney's mistake in determining a petitioner's one-year limitations period does not constitute extraordinary circumstances for purposes of equitable tolling); Lovato v. Suthers, 42 Fed. Appx. 400 (10th Cir. July 15, 2002) (holding that purported difficulty of legal issues in state prisoner's pro se habeas petition was an inadequate ground to equitably toll the habeas limitations period); Jihad v. Hvass, 267 F.3d 803 (8th Cir. 2001) (holding that period of time prior to petitioner's filing for state post-conviction relief could not be equitably tolled for purpose of AEDPA one-year limitations period based on petitioner's inability to obtain counsel to represent him in his state post-conviction proceeding and failure of defense counsel to send petitioner his trial transcript until approximately 8 months after his conviction); Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir. 2001) (holding that the state's failure to provide trial transcript did not toll limitations period for filing habeas petition); Smith v. McGinnis, 208 F.3d 13 (2d Cir. 2000) (holding that petitioner's case did not present extraordinary

or exceptional circumstances warranting equitable tolling because his delays in seeking collateral review of his conviction did not show reasonable diligence); Adams v. LeMaster, 223 F.3d 1177 (10th Cir. 2000) (holding that petitioner's ten-year delay in seeking collateral review of his conviction did not show reasonable diligence as required for equitable tolling of limitations period); Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir.1999) ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing."); In re Boshears, 110 F.3d 1538, 1540-41 (11th Cir. 1997) (holding that newly discovered evidence suggesting that petitioner did not commit the crime did not justify the filing of a successive habeas petition because the petitioner had failed to explain why the evidence could not have been discovered earlier with due diligence); Smith v. Stegall, 141 F.Supp.2d 779 (E.D. Mich. 2001) (holding that state prisoner was not entitled to equitable tolling where he failed to explain why he waited six years to pursue state post-conviction relief).

As noted by the United States Court of Appeals for the Fourth Circuit:

> [a]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir.2000).

The discussion above reveals that the petition for writ of habeas corpus in the instant action was not timely filed in accordance with the directives in 28 U.S.C. § 2244(d). Consequently, it will be dismissed as untimely. An appropriate order follows.

**C.     Certificate of Appealability**

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability (COA) has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. ' 2254(c)(2). There is a difficulty with this provision when the District Court does not decide the case on the merits but decides the case on a procedural ground without determining whether there has been a denial of a constitutional right. In <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000), the Supreme Court held that " "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether the Petition was filed within the one-year limitation period provided for under AEDPA. Accordingly, a certificate of appealability will be denied.

**AND NOW**, this <u>7th</u> day of January, 2010;

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus is **DISMISSED AS UNTIMELY.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

                              Lisa Pupo Lenihan
                              United States Magistrate Judge

cc:    Steven David Vogt
        BN-3436
        SCI Fayette
        Box 9999
        LaBelle, PA 15450-0999