# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN DAVID VOGT, ) | |
| ) | Civil Action No. 08 - 530 |
| Petitioner, ) | |
| ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| v. ) | |
| ) | |
| SUPERINTENDENT COLEMAN, ) | ECF No. 42 |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on a Motion for Relief from Judgment filed by Petitioner, Steven David Vogt, pursuant to Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"). (ECF No. 42). This is the fourth Rule 60(b) motion Vogt has filed since his petition for writ of habeas corpus was dismissed as untimely on January 8, 2010. This motion is based on the United States Supreme Court's recent ruling in McQuiggen v. Perkins, 133 S. Ct. 1924 (2013), which held that actual innocence, if proved, serves as a gateway through which a habeas petitioner may pass whether the impediment is a procedural bar or expiration of the statute of limitations. Vogt claims that he has evidence which demonstrates that he is actually innocent of the crimes for which he was convicted and therefore the Court should vacate its Order of dismissal of his petition as untimely and evaluate his claims on their merits. For the reasons explained herein, Vogt's Rule 60(b) motion will be denied.

1

I. **Relevant Facts and Procedural History**[1]

The facts, as set forth by the Superior Court, are as follows. On May 12, 1990, Francis Landry picked up Michael Sopo, Margaret Zawodniak and Steven Vogt in his blue Nissan and took them to his residence in Export, Pennsylvania where, except for Landry, they drank beer. A while later, Walter Cowfer came to Landry's residence. Cowfer, Sopo and Zawodniak then left and went to Arthur McClearn's apartment where they discussed Landry's murder. The parties returned to Landry's residence where they resumed drinking beer. At some point, Cowfer went to Landry's car where Landry was sleeping and asked to take the car to Cupec's Lake. He then ordered Landry to get in the back seat where he was surrounded by two of the others. They drove to the lake where they ordered Landry out of the car and pushed him over a hill where he fell a 30-40 foot drop into the lake. The others threw rocks into the water and rolled a huge boulder into the water hitting Landry. They then went back to the car, drank some more beer and left the area. The next day, Landry's drowned body was discovered by some area scuba divers. Several days later, State Trooper Strawbridge received a call from the Monroe County Sheriff's Department in Tavernier, Florida that Sopo, Vogt and Cowfer were in custody there and in possession of the registration plate of Landry's car and his wallet.

Subsequently, Vogt, Cowfer, Zawodniak, Sopo and McClearn were arrested and charged with Landry's murder. Sopo pled guilty to criminal conspiracy and McClearn pled guilty to third degree murder; both men testified on behalf of the Commonwealth during the trial of Vogt, Cowfer and Zawodniak, which commenced before a jury on January 29, 1991, in the Court of Common Pleas of Butler County, Pennsylvania. On January 31, 1991, Cowfer and Vogt were found guilty of Murder in the First Degree, Robbery, Theft, Kidnapping and Criminal

---

[1] As taken from the Court's Memorandum Opinion and Order dated January 8, 2010. (ECF No. 24.)

Conspiracy; Zawodniak was acquitted of all charges. Following the denial of post-verdict motions, on June 17, 1991, Vogt was sentenced to life imprisonment.

Vogt filed a timely notice of appeal to the Superior Court of Pennsylvania, which was consolidated with the appeal of his co-defendant, Cowfer. Vogt filed his brief in the Superior Court on March 23, 1992, wherein he raised the following claims.

1. The evidence was insufficient to sustain the guilty verdicts as to the crimes of kidnapping, theft by unlawful taking and robbery.

2. The lower court erred by failing to grant Vogt's request for demurrer to reduce the first degree murder charge to third degree based on Vogt's intoxication.

3. A new trial was required due to the prejudicial effect of improper criminal evidence being submitted to the jury.

On October 21, 1991, the Superior Court affirmed the judgment of the lower court. Vogt filed a petition for allowance of appeal to the Supreme Court of Pennsylvania, which was denied by that court on June 25, 1993. He did not seek discretionary review in the United States Supreme Court.

On September 17, 1997, Vogt filed a *pro se* petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9542. Following appointment of counsel, an amended petition was filed asserting that Vogt was entitled to relief due to newly discovered exculpatory letters from convicted co-conspirator Cowfer. The first letter was written to Vogt's counsel and outlined Cowfer's purported testimony had he elected to testify in his own defense at the joint trial and stated that Vogt was innocent of Landry's murder. This letter was placed in Vogt's file without Vogt's knowledge. On March 1, 1997, Cowfer sent another letter to Vogt's counsel but mailed it to Vogt instead. After receipt of this letter, Vogt filed his PCRA petition. A PCRA hearing was scheduled for December 7, 1998; however, on that date, Vogt

3

voluntarily withdrew his PCRA petition. The lower court specifically noted that although Cowfer had been transported to the Butler County Prison and was available for the hearing, Vogt still chose to voluntarily withdraw his PCRA petition. No appeal was filed.

On July 2, 2004, Vogt filed a second PCRA petition. Appointed counsel filed an amended petition on November 17, 2004, raising the following claims.

1. Newly discovered evidence that Commonwealth witness, Michael Sopo, entered a guilty plea to burglary pursuant to a plea agreement with the Commonwealth dated January 14, 1991 and that counsel was ineffective for failing to effectively use this evidence to impeach this key witness.

2. Newly discovered evidence in the form of statements by codefendant, Walter S. Cowfer, Jr. and that counsel was ineffective in failing to preserve this issue for review.

3. Ineffective assistance of counsel for failure to file a motion to sever Vogt's trial from his co-defendants.

4. Ineffective assistance of counsel for failure to call character witnesses.

5. Ineffective assistance of counsel for failure to prevent Commonwealth witnesses Carrie Deiseroth and Leonard Mayhugh from testifying that Walter S. Cowfer, Jr. was accompanied by an unidentified individual when he confessed to committing the homicide.

6. Ineffective assistance of counsel for failure to present an intoxication defense.

In the amended petition filed on November 17, 2004, Vogt attached an affidavit by Cowfer dated September 23, 2004. In the affidavit, Cowfer averred that he went to the home of Leonard Mayhugh several hours after the murder of Landry. Cowfer related that Vogt, Sopo and Zawodniak waited in the car while he and McClearn entered the Mayhugh residence. A hearing was held on Vogt's PCRA petition on January 27, 2006. On July 12, 2006, the trial court denied the PCRA petition as untimely. Vogt filed a timely notice of appeal and on October 24, 2007, the Superior Court of Pennsylvania affirmed the trial court's determination denying Vogt PCRA

relief. Vogt filed a petition for allowance of appeal to the Supreme Court of Pennsylvania, which was denied by that court on April 8, 2008.

## II. Federal Habeas Corpus Proceedings

Vogt's federal petition for writ of habeas corpus was dated April 14, 2008. In his petition, he raised the following claims.

1. Prosecutorial misconduct in illegally suppression/withholding [sic] Brady material; the identity of male party to confession.

2. Prosecutorial misconduct in illegally redacting trial testimony of Com. witnesses Deiseroth and Mayhugh.

3. Prosecutorial misconduct in the knowing use of false evidence to convict Petitioner.

4. Prosecutions [sic] knowing use of false evidence when it elicited only some of the details of witness Sopo's plea agreement.

On January 8, 2010, this Court dismissed the petition as untimely, finding that it was not filed within the AEDPA's one-year statutory limitations period, *see* 28 U.S.C. § 2244(d), for any of his claims. Vogt then appealed and the Third Circuit Court of Appeals denied his request for a certificate of appealability on May 24, 2010.

Vogt filed his first Rule 60(b) motion on September 24, 2010. In his motion, he argued that the Court's order of dismissal should be vacated because he had new evidence that proved his innocence; specifically, an affidavit from Margaret Zawodniak dated August 27, 2010, stating that Vogt severely injured his ankle from a drunken fall earlier that night and was too intoxicated to have played a part in Landry's death. She claimed that on the night Landry was killed Vogt was with her in the car or just right outside of it throwing up. Vogt also had an affidavit from Tricia Holfelder, his assistant, who stated that she had spoken to Michael Sopo, and, although he was too reluctant to provide a sworn statement, he represented to her that Vogt

5

had nothing to do with Landry's death. Sopo also presumably relayed to Holfelder that his testimony was coerced. Finally, Vogt provided the Court with the March 1997 letter written by Cowfer, which stated that Vogt was innocent. Vogt's Rule 60(b) motion was denied because he had not first exhausted his newly discovered evidence claim in the state courts. His request for reconsideration of that order was also denied. He then filed an appeal with the Third Circuit, which denied his request for a certificate of appealability on February 7, 2011, stating in its order that it was not settled law that actual innocence could serve as a basis for overcoming AEDPA's statute of limitations, and, to the extent that it could, Vogt's evidence did not establish such innocence.

Vogt filed his second Rule 60(b) motion on November 17, 2011, again asserting that he had evidence to establish his actual innocence – the aforementioned affidavits from Zawodniak and Holefelder and the letter from Cowfer. Vogt stated that in accordance with the Court's previous order he attempted to exhaust his innocence claim in state court by filing another PCRA petition but that the trial court denied the petition stating that Vogt had failed to prove that the new evidence would have changed the outcome of the trial. Vogt's Rule 60(b) motion was denied in accordance with the directive issued by the Third Circuit denying his previous request for a certificate of appealability with respect to his first Rule 60(b) motion. His motion for reconsideration was denied on December 6, 2011.

Subsequently, Vogt filed an application with the Third Circuit for permission to file a second or successive federal habeas petition based on the Supreme Court's decision in Martinez v. Ryan, 132 S. Ct. 1309 (2012), which held that ineffectiveness of post-conviction counsel can serve to excuse a procedural default of claims alleging trial counsel ineffectiveness. His request was denied on May 31, 2012.

Vogt filed his third Rule 60(b) motion on July 9, 2012, also based on Martinez v. Ryan, 132 S. Ct. 1309 (2012), and this Court denied the motion on July 18, 2012.

One year later, Vogt has filed his fourth Rule 60(b) motion, this time based on McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), where the Supreme Court held that a "colorable" claim of actual innocence constitutes an equitable exception that can overcome the bar of AEDPA's one-year statute of limitations.

### III. Rule 60(b) Standard

Federal Rule of Civil Procedure 60(b) entitles the moving party to relief from judgment on several grounds, including the catch-all category "any other reason justifying relief form the operation of the judgment." Fed. R. Civ. P. 60(b)(6). Subsection (b)(6) is the provision under which Vogt brings his motion. A motion under subsection (b)(6) must be brought "within a reasonable time," Fed. R. Civ. P. 60(c)(1), and requires a showing of "extraordinary circumstances." Gonzalez v. Crosby, 545 U.S. 524, 535 (2005). The Supreme Court has explained that "[s]uch circumstances will rarely occur in the habeas context." Id. at 534. A change in decisional law after judgment is entered rarely justifies Rule 60(b)(6) relief. *See*, *e.g.*, id. at 536-38 (concluding that the change in habeas law brought by Artuz v. Bennett, 531 U.S. 4 (2000), did not amount to "extraordinary circumstances" justifying the reopening of a final judgment under Rule 60(b)(6)). *See also* 11 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2864 (3d ed. April 2013).

As an initial matter, a district court must first determine whether a Rule 60(b) motion is, in actuality, a second or successive habeas petition. Because federal courts lack jurisdiction to consider a second or successive habeas petition if a petitioner does not first obtain an order from

the circuit, Burton v. Stewart, 549 U.S. 147, 157 (2007), the district court would lack jurisdiction over the motion if it was in fact a second or successive habeas petition. The Supreme Court has held that the use of Rule 60(b) to advance a claim that is "in substance a successive habeas petition" would constitute an impermissible circumvention of the standards set forth in the AEDPA. Gonzalez, 545 U.S. at 531-32.

In this case, Vogt's Rule 60(b) motion is not a prohibited second or successive habeas petition. *See* Gonzalez, 545 U.S. at 535 (A Rule 60(b) motion challenging "only the District Court's previous ruling on the AEDPA statute of limitations . . . is not the equivalent of a successive habeas petition."); Lewis v. United States, No. 12-4085, 2013 U.S. App. LEXIS 14347 (1st Cir. June 26, 2013) (finding that the petitioner's Rule 60(b) motion asserting actual innocence was not a prohibited second or successive § 2255 motion because it sought to correct what it claimed was an error in the district court's prior judgment that his motion was untimely but nevertheless denying his application for a certificate of appealability); Parham v. Klem, 496 F. App'x 181 (3d Cir. 2012) (holding that the district court had jurisdiction over the petitioner's Rule 60(b) motion and that it was not a second or successive habeas petition because the court's consideration of "new" evidence of actual innocence "does not transform a gateway claim into the assertion of a federal basis for relief"). *But see* Ellis v. Marshall, No. 01-cv-12147, 2013 U.S. Dist. LEXIS 96320 (D. Mass. July 10, 2013) (finding that the petitioner's Rule 60(b) motion based on evidence of actual innocence was in essence an attempt to raise a new constitutional argument and therefore he had to file a request with the circuit to file a second habeas petition).

However, the Court's research did not yield a case in which a petitioner has actually been permitted to reopen a judgment under Rule 60(b)(6) based solely on the change in law brought

8

about by McQuiggin.  In other words, it is unclear whether an actual showing of innocence constitutes "extraordinary circumstances" that justifies reopening a final judgment pursuant to a Rule 60(b)(6) motion so that a district court can evaluate the merits of claims in an untimely filed habeas petition.  However, this Court need not address this issue because Vogt's evidence does not establish his innocence such that it is more likely than not that no reasonable juror would have voted to convict him.  *See* McQuiggin, 133 S. Ct. at 1933.

## IV. Discussion

As previously noted, in McQuiggin the Supreme Court held that a "colorable" claim of actual innocence constitutes an equitable exception that can overcome the bar of the AEDPA one-year statute of limitations.  133 S. Ct. 1924.  "Colorable," as that term has been used in the context of consideration whether a "miscarriage of justice" warrants excusing procedural defaults, means "reliable evidence of factual innocence."  Schlup v. Delo, 513 U.S. 298, 324 (1995).  To establish a colorable claim of actual innocence, a petitioner must show, usually by way of new evidence, that it is more likely than not, that no reasonable jury would have convicted him.  Schlup, 513 U.S. at 327; Glass v. Vaughn, 65 F.3d 13, 16-17 (3d Cir. 1995).  This showing requires "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324; *see also* Cristim v. Brennan, 281 F.3d 404, 420-21 (3d Cir. 2002).

The Supreme Court's opinion in McQuiggin makes clear the limitations on its holding and stresses the "demanding" nature of the test for permitting the gateway to open:  "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"  Id. at 1936 (quoting Schlup, 513 U.S. at 316).

The Court also noted that the degree of diligence displayed by the petitioner in pursuing and presenting the new evidence "bears on the determination whether the petitioner has made the requisite showing [of actual innocence]." Id. at 1935.

In this case, the Court is not persuaded that Vogt has made a credible showing of actual innocence. Notwithstanding the fact that this "new" evidence is the same evidence in which the Third Circuit stated did not establish Vogt's innocence when it denied his application for a certificate of appealability on February 7, 2011, and in which the Court of Common Pleas of Butler County stated would not have compelled a different verdict when it denied his PCRA petition on November 16, 2010, and is the same evidence that has been presented before this Court at various points throughout these habeas proceedings, it is clear that it does not meet Schlup's high actual innocence threshold.

Vogt first offers the August 25, 2010 affidavit from Zawodniak in which she states that Vogt was highly intoxicated the night of Landry's death and that earlier in the night he had sprained his left ankle and could barely walk on it. She further states that when Cowfer, Landry and McClearn left the car that she and Vogt remained in the back seat with Sopo sitting in the front passenger seat. When Vogt started to get sick, she leaned over and opened his door and shoved him outside so he wouldn't throw up in the car. She states that he laid on the ground outside while she went to sleep. When she woke up she saw that Vogt was crawling back into the car. She states that he was in and out of consciousness and did not know what was going on. This evidence does not support a showing of factual innocence. Notably, Zawodniak does not account for Vogt's actions during the time, however long it was, when she was asleep, nor could she as she clearly has no first-hand knowledge of what occurred during that time.

The affidavit of Tricia Holfelder, which purports to recount a conversation she had with Michael Sopo in 2010, is hearsay, and despite Holfelder stating that Sopo would be willing to make a statement that Vogt was not involved in Landry's death, Sopo has never done so. Moreover, besides Sopo's conclusive statement that Vogt had no involvement in Landry's murder, Holfelder provides no basis for Sopo's alleged knowledge to such a fact beyond a simple bald assertion. Nevertheless, for the reasons stated in the response to Vogt's Rule 60(b) motion, even accepting Sopo's purported testimony at face value it fails to establish that no reasonable juror would have convicted Vogt in light of the other evidence presented against him at trial.

Finally, the March 1997 letter written by Cowfer directly contradicts Zawodniak's claim that Vogt was incapacitated in the back seat or directly outside of the car by either an ankle injury or intoxication. Cowfer states that Sopo and Zawodniak were passed out by the time the party arrived at the scene of the crime and that they remained in the car while he, Vogt, McClearn and Landry made their way through the wooded area and eventually down to another area. He states that the four of them sat around drinking before he walked to the edge and was eventually joined by McClearn and Landry, while Vogt stayed at the tree line drinking. Cowfer's story represents Landry's death as merely the result of horseplay gone awry and claims that Vogt had nothing to do with it.

The Court notes that Cowfer was available to testify in Vogt's PCRA hearing that was scheduled for December 7, 1998; but, on that date, Vogt voluntarily withdrew his PCRA petition. Nevertheless, notwithstanding the crucial fact that Vogt has presented two differing theories of actual innocence with evidence that does not meet the <u>Schlup</u> standard, McClearn testified at trial that Vogt was an integral participant in Landry's murder. Therefore, Vogt's evidence, even if taken at face value and put before the jury, does not remotely persuade the Court that no

reasonable juror would have voted to convict him as it is possible that the jury would have chosen to believe McClearn's testimony over the others.

Petitioner provides no cause to disturb the Court's dismissal of his petition as time-barred. Therefore,

**IT IS HEREBY ORDERED** that Petitioner's Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b) (ECF No. 42) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Dated: December 16, 2013.

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Steven David Vogt
    BN-3436
    SCI Fayette
    Box 9999
    LaBelle, PA 15450-0999

    Counsel of Record